[Cite as *Tarahfields, L.L.C. v. Wilson*, 2025-Ohio-1337.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Tarahfields, LLC et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 24AP-355 |
| v. | : | (C.P.C. No. 22CV-2313) |
| Craig J. Wilson et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on April 15, 2025

**On brief:** *Law Office of Cynthia M. Rodgers*, *L.L.C.*, and *Cynthia M. Rodgers*, for appellants.

**On brief:** *Weston Hurd LLP*, and *Edward G. Hubbard*, for appellees Craig J. Wilson and CJ Wilson Law Office, LLC. **Argued:** *Edward G. Hubbard*.

**On brief:** *Reminger Co.*, *L.P.A.*, *D. Patrick Kasson*, *Michael K. Hushion*, and *Austin Richards*, for appellees Emens Wolper Jacobs & Jasin Law Firm Co., LPA, Beatrice E. Wolper, and Richard Emens. **Argued:** *D. Patrick Kasson*.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Plaintiffs-appellants, Tarahfields, LLC, Razor Lake, LLC, and Terry L. Jurin (collectively, "appellants"), appeal the judgment of the Franklin County Court of Common Pleas, which granted (1) a motion for judgment on the pleadings filed by defendants-appellees, Emens Wolper Jacobs & Jasin Law Firm Co., LPA, Beatrice E. Wolper, and Richard Emens, and (2) a motion to dismiss filed by defendants-appellees, Craig James Wilson and CJ Wilson Law Office, LLC (the "Wilson firm"), which the trial court converted into a motion for summary judgment. For the following reasons, we affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Appellants filed this case in the trial court on April 8, 2022, alleging claims for breach of contract, legal malpractice, and unjust enrichment against Wilson and the Wilson firm. Appellants' claims arose out of Wilson's legal representation of appellants with respect to the sale of their sand and gravel business in February 2017. Appellants first amended their complaint on May 31, 2022, adding Wolper and the Emens & Wolper Law Firm Co., LPA, as defendants. Appellants alleged that Wilson was, at all relevant times, an agent of the Wilson firm or an employee of the Emens & Wolper Law Firm Co., LPA, where he was supervised by Wolper. Like the original complaint, the first amended complaint contained claims for breach of contract, legal malpractice, and unjust enrichment.

{¶ 3} In August 2022, with leave of court, appellants filed a second amended complaint (captioned simply "Amended Complaint"), which added Emens as a defendant and renamed the law firm added as a defendant in the first amended complaint as Emens Wolper Jacobs & Jasin Law Firm Co., LPA (the "Emens Wolper firm").[1] The August 2022 amended complaint sets out claims for legal malpractice, unjust enrichment, promissory estoppel, and equitable estoppel against Wilson, the Wilson firm, Wolper, Emens, and the Emens Wolper firm.

{¶ 4} The following facts are taken from appellants' August 2022 amended complaint and the exhibits attached to it.

### A. The Appellants

{¶ 5} In 1996, appellant Jurin and his wife purchased approximately 165 acres of land in Coshocton County, Ohio. In 2000, he "created an interest in the sand and gravel distinct from his ownership of the land by the creation of a right to take the sand and gravel." (Aug. 10, 2022 Am. Compl. at ¶ 26.) Jurin remained the owner of approximately 110 acres in late October 2008. He mortgaged 13 acres in 2011.

{¶ 6} In 2003, Jurin registered appellant Razor Lake, LLC, with the Ohio Secretary of State as a limited liability company, whose purpose was "to engage in mining, manufacture, [and] distribution of mineral products including gravel, top soil and sand." *Id.* at ¶ 27. Razor Lake, LLC, applied for a mining permit from the Ohio Department of Natural Resources, which was issued in 2003 in the name Razor Lake Sand and Gravel,

---

[1] Appellants allege that Emens & Wolper Law Firm Co., LPA, changed its name to Emens Wolper Jacobs & Jasin Law Firm Co., LPA, on or about June 25, 2019. (Aug. 10, 2022 Am. Compl. at ¶ 17.) We refer to the law firm, whether before or after its name change, as the "Emens Wolper firm."

LLC.  Razor Lake, LLC, registered Razor Lake Sand and Gravel, LLC, as a fictitious name in 2013.

{¶ 7}   Appellees registered appellant, Tarahfields, LLC ("Tarahfields"), with the Ohio Secretary of State  in 2013, with the Emens Wolper firm as its initial statutory agent.[2] Jurin transferred two parcels of real estate to Tarahfields in 2013, and he signed documents relevant to this case as the sole and managing member of both Razor Lake, LLC, and Tarahfields.  The August 2022 amended complaint contains little additional information about Tarahfields and its relation to the other appellants.

### B.  Appellees and the Sale of Appellants' Business

{¶ 8}   Appellants retained the Emens Wolper firm and attorneys Emens, Wolper, and Wilson (then an employee of the Emens Wolper firm) in October 2013 to represent them with respect to a potential sale of appellants' sand and gravel business.  The Emens Wolper firm assigned Wilson to handle appellants' business matters in August 2015. Wolper and Emens supervised Wilson while he was employed by the Emens Wolper firm.

{¶ 9}   Appellants found a buyer—RL Materials, Inc. (sometimes referred to as "Razor Lake Materials, Inc.") (hereinafter, "RL Materials")—for their sand and gravel business in 2016 or January 2017.  As part of a $1.4 million deal, RL Materials and another entity, Perry Fields, LLC, agreed to pay $436,100 to Huntington Bank to satisfy an existing mortgage, and to pay $363,900 for appellants' business assets. Wilson promised Jurin that "the buyers agreed to give a 'second mortgage' and personal signatures to guarantee payment" of the unpaid $600,000 balance of the purchase price. *Id*. at ¶ 77.  Wilson drafted a promissory note and second mortgage in February 2017, but appellants contend that appellees did not obtain the buyers' signatures and have never produced executed copies of those documents.

{¶ 10} Wilson submitted his resignation from the Emens Wolper firm and announced his intention to form the Wilson firm on or about February 2, 2017.  He continued, however, to wrap up matters for the Emens Wolper firm through March 1, 2017, and the Emens Wolper firm billed appellants for work completed by Wilson through February 27, 2017.

---

[2] In 2017, Tarahfields appointed the Wilson firm as its subsequent agent, and in 2022, Tarahfields again changed its statutory agent to Tarah L. Jaras.

{¶ 11} On February 3, 2017, the Emens Wolper firm and Wilson presented some of the sale documents, previously reviewed by Wolper, to Jurin for his signature. Among those documents was an employment agreement, which Wilson described to Jurin as "like a 'finance' agreement." *Id.* at ¶ 266. Wilson told Jurin the employment agreement "wasn't really an employment contract," *id.* at ¶ 83, and that Jurin would not be "an actual employee" of the buyers. *Id.* at ¶ 95. Wilson reiterated that the unpaid $600,000 (the total "salary" owed to Jurin over the course of eight years under the employment agreement) would be " 'personally guaranteed.' " *Id.* at ¶ 96. Jurin signed the employment agreement on February 3, 2017.

{¶ 12} Appellants allege that appellees did not explain the risks of adding an employment agreement to the deal, and they maintain that the Emens Wolper firm should have known that an employment agreement that does not create an employment relationship is illegal. Appellants claim that appellees did not advise Jurin he would be unable to retire following the sale, due to duties placed on him by the employment agreement. They further maintain the employment agreement "was not the finance document that was needed to properly secure a second mortgage on the purchase [of] the business, real property and equipment." *Id.* at ¶ 267.

{¶ 13} Also on February 3, 2017, on behalf of Razor Lake, LLC, and Tarahfields, Jurin signed an assignment and bill of sale, transferring identified business assets to RL Materials. An undated security agreement, attached to appellants' August 10, 2022 amended complaint, purports to give Jurin a security interest in RL Materials's assets, to secure RL Materials's payment obligations under the employment agreement. Appellants claim, however, that Jurin did not sign the security agreement, and that appellees added his signature from an otherwise blank sheet of paper to the end of the security agreement sometime in 2017.

{¶ 14} The Emens Wolper firm, including Wilson, continued to finalize the sale of appellants' business, and particularly continued to work on bank-payoff and closing issues, through February 2017, allegedly without appellants' written authorization. Appellants maintain that the Emens Wolper firm revised the agreement the day before closing without appellants' knowledge, and that it did not schedule sufficient time to review the deal documents with appellants before closing.

{¶ 15} No one from the Emens Wolper firm attended the February 27, 2017 closing, at which Jurin, as managing member of Tarahfields, signed a limited warranty deed to

transfer the surface of approximately 110 acres of real estate to Perry Fields. Wilson did not present a second mortgage for the buyers' signatures, nor did he instruct the title company to hold the deed until signatures were obtained on a second mortgage. The limited warranty deed was recorded in Coshocton County on March 9, 2017. No promissory note and/or second mortgage has been recorded in Coshocton County, nor have appellees ever provided appellants a copy of a signed promissory note or second mortgage. Appellants allege that appellees' deficient representation left them with no guarantee of payment for the $600,000 that remained owing on the purchase agreement after the deed and assets were transferred to the buyers at closing.

{¶ 16} Appellants' complaints about their attorneys' conduct through the closing of the sale on February 27, 2017 are many and include complaints about appellees' drafting of documents and failures to draft, secure signatures on, and file and/or record other documents. Reading the amended complaint as a whole, however, the gist of appellants' malpractice claims is that, by using the employment agreement as a means of financing the unpaid purchase price and by failing to obtain and record a valid second mortgage and uniform commercial code ("UCC") filings, appellees "left the [appellants] with no collateral and no guaranteed payment of the remaining $600,000 that was owed on the purchase contract after the deed and assets were transferred to the buyers." *Id*. at ¶ 269.

### C. Post-Closing Actions and the Coshocton County Case

{¶ 17} Appellants allege that Wilson finished his last day of employment with the Emens Wolper firm on March 1, 2017, and that he did not retain appellants' client file, including papers that still needed to be filed with the Coshocton County Recorder.

{¶ 18} Wilson and the Wilson firm provided legal representation to appellants after Wilson left the Emens Wolper firm. Thus, when RL Materials initially failed to pay Jurin in accordance with the employment agreement in May 2017, Jurin turned to Wilson. Shortly thereafter, in the summer of 2017, Wilson realized he had not filed appellants' UCC lien, and he sought a copy of appellants' file from the Emens Wolper firm. Wilson asked Jurin to call the Emens Wolper firm "to get the file for Wilson so he could record the security lien." *Id*. at ¶ 288.

{¶ 19} The Emens Wolper firm mailed at least a portion of appellants' client file to Wilson in July 2017, and it refunded the remainder of appellants' retainer on August 3, 2017. Attached to the August 10, 2022 amended complaint is a July 25, 2017 letter from Wolper to Jurin, in which Wolper acknowledges Jurin's "notice of change of counsel and

discharge indicating your choice of Craig Wilson and [the Wilson firm] as your counsel."
(Aug. 11, 2022 Pls.' Ex. 12.) She informed Jurin, the Emens Wolper firm's "representation
of you has therefore concluded, and our attorney-client relationship is terminated." *Id.* In
August 2017, the Wilson firm replaced the Emens Wolper firm as Tarahfields's statutory
agent.

{¶ 20} Also in August 2017, Wilson drafted and had his paralegal file with the Ohio
Secretary of State a UCC statement regarding the mining equipment involved in the
February 2017 sale.

{¶ 21} In 2018, Wilson drafted letters on behalf of Jurin to the buyers of appellants'
sand and gravel business, regarding the buyers' missed payments under the employment
agreement, a potential buyout of the employment agreement, and in response to the buyers'
claims that Jurin had breached the employment agreement by failing to fulfill his duties as
an employee. Appellants allege that a December 2018 dispute, which arose when the buyers
discontinued payments to Jurin and claimed he was in breach of the employment
agreement, was "due to flaws in the Employment Agreement aka finance document."
(Aug. 10, 2022 Am. Compl. at ¶ 301.) Wilson told Jurin the best way he could help was as
a witness, and he referred Jurin to attorney Thomas D. White and White Law Office Co.
(collectively, "White") in February 2019.

{¶ 22} In July 2019, represented by White, appellants sued RL Materials, Perry
Fields, Adam T. West, Heath A. Watton, and The Community Bank in Coshocton County
for breach of the employment agreement, recission of contract, and unjust enrichment.
Although they were being represented by White in that case, appellants maintain that
Wilson "continued to act as [their] counsel by keeping the client file which included drafts,
letters, emails, promissory note and UCC documents," *id.* at ¶ 309, and that Wilson
withheld from White, until after the filing of the Coshocton County complaint, documents
that were needed to determine what causes of action to assert. On September 29, 2020,
appellants voluntarily dismissed from the Coshocton County case claims by Tarahfields and
Razor Lake, LLC, and Jurin's claims for recission and unjust enrichment, leaving pending
only Jurin's claim for breach of contract.

{¶ 23} Wilson initially agreed to be a witness for appellants in the Coshocton County
case, and Wilson and White communicated with each other during the preparation of
appellants' case. Ultimately, however, Wilson did not testify. Appellants allege that, on or
about April 8, 2021, the Coshocton County judge told White the employment contract at

the heart of the case "was fraudulent." *Id*. at ¶ 389. The jury in the Coshocton County case returned a verdict in favor of the defendants, and the trial court dismissed Jurin's complaint with prejudice. Appellants did not appeal the unfavorable Coshocton County judgment.

{¶ 24} Jurin contacted Wilson about the outcome of the Coshocton County case, but he did not speak with Wilson until after the time to appeal that case had lapsed. On June 10, 2021, after reviewing the Coshocton County case, Wilson told Jurin he might have a legal malpractice claim "against his 'attorney,' " albeit with only a small chance of prevailing. *Id*. at ¶ 382; *see also id*. at ¶ 149-50, 381, 383, 444-46. Appellants allege that Wilson did not specify which attorney he was referring to. Appellants claim Wilson should have advised Jurin of the deadline for appealing the Coshocton County judgment, advised him to seek appellate counsel, and informed appellants of the deadline to refile Tarahfields's and Razor Lake, LLC's voluntarily dismissed unjust enrichment claims.

### D. The Malpractice Action

{¶ 25} Jurin contacted independent counsel to review his cases, including for a potential malpractice action, in March 2022. Appellants filed this action the following month.[3] All appellees filed dispositive motions after appellants filed the August 2022 amended complaint. Wolper, Emens, and the Emens Wolper firm filed a motion for judgment on the pleadings on August 11, 2022, and Wilson and the Wilson firm filed a motion to dismiss on December 2, 2022. In both motions, appellees argued that appellants' claims are untimely. On May 6, 2024, the trial court granted the motion for judgment on the pleadings filed by Wolper, Emens, and the Emens Wolper firm and the motion to dismiss filed by Wilson and the Wilson firm, having converted that motion into a motion for summary judgment.

{¶ 26} The trial court stated that Wolper, Emens, and the Emens Wolper firm provided legal services to appellant until mid-2017, when the Emens Wolper firm returned the unused portion of appellants' retainer. The trial court held that appellants' malpractice claims against Wolper, Emens, and the Emens Wolper firm were barred by the four-year statute of repose in R.C. 2305.117(B) because the alleged conduct that gave rise to those claims occurred in 2017, more than four years before appellants filed this case. It also held that those claims were barred by the one-year statute of limitations, because appellants

---

[3] Contemporaneously with this case, appellants filed a malpractice action in Holmes County against White, alleging that White failed to advise them that the statute of limitations had passed for a legal malpractice claim against the Emens Wolper firm.

were reasonably on notice of potential malpractice claims as early as 2017 and no later than July 2019, when appellants filed their lawsuit in Coshocton County. The trial court held that appellants' unjust enrichment and promissory estoppel claims, which arose out of their legal representation, were subsumed into the malpractice claims and were likewise subject to dismissal. Finally, the trial court dismissed appellants' purported claim for equitable estoppel, stating that equitable estoppel is a defense, not a cause of action.

{¶ 27} The trial court converted Wilson and the Wilson firm's motion to dismiss into a motion for summary judgment, as authorized by Civ.R. 12(B)(6), because the motion relied on information outside of appellants' amended complaint. As with appellants' claims against Wolper, Emens, and the Emens Wolper firm, the trial court concluded that appellants' malpractice claims against Wilson and the Wilson firm were barred by both the statute of limitations and the statute of repose. And for the same reasons stated in its decision on the motion for judgment on the pleadings, the trial court dismissed appellants' claims for unjust enrichment, promissory estoppel, and equitable estoppel against Wilson and the Wilson firm.

{¶ 28} Also relevant to this appeal are two other motions filed by appellants. First, in response to the filing of a notice of suggestion of Emens's death on August 7, 2023, appellants filed a motion on November 13, 2023, for leave to file instanter a motion to substitute the special administrator of Emens's estate as a defendant. Second, on February 15, 2024, appellants filed a motion to deem admissions admitted and to compel production of documents from Wilson and the Wilson firm. The trial court did not expressly rule on either of those motions.

## II. ASSIGNMENTS OF ERROR

{¶ 29} Appellants filed a timely appeal and raise the following five assignments of error:

> I. THE TRIAL COURT ERRED BY GRANTING DEFENDANTS/APPELLEES' MOTION TO DISMISS
>
> II. THE TRIAL COURT ERRED BY GRANTING DEFENDANTS/APPELLEES' MOTION FOR JUDGMENT ON THE PLEADINGS
>
> III. THE TRIAL COURT ERRED BY REVIEWING THE JULY 2022 AMENDED COMPLAINT INSTEAD OF THE OPERATIVE AUGUST 10, 2022 AMENDED COMPLAINT

IV.   THE TRIAL COURT ERRED BY OVERRULING THE
      MOTION TO COMPEL

V.    THE TRIAL COURT ERRED BY OVERRULING THE
      MOTION   TO   SUBSTITUTE   THE   SPECIAL
      ADMINISTRATOR  FOR  THE  DECEDENT  JOHN
      RICHARD EMENS

(Appellants' Brief at viii.)

## III.  ANALYSIS

{¶ 30} The bulk of appellants' argument focuses on their first and second assignments of error and the trial court's determination that their claims are time-barred. For ease of discussion, however, we address appellants' assignments of error out of order, beginning with their third, fourth, and fifth assignments of error, as resolutions of those assignments of error could affect our analysis of the first and second assignments of error.

### E.  Assignment of Error No. III

{¶ 31} In their third assignment of error, appellants argue that the trial court reviewed the wrong complaint when deciding appellees' dispositive motions.  We disagree.

{¶ 32} Appellants filed their first amended complaint as of right in May 2022.  On July 28, 2022, without obtaining leave of court, appellants filed a second amended complaint, which Wilson and the Wilson firm moved to strike.  On August 10, 2022, appellants filed a motion for leave to file instanter their second amended complaint in order to add Emens as a defendant and to assert two new claims.  Unlike appellants' July 28, 2022 filing, the pleading attached to their motion for leave is captioned just "Amended Complaint," not "Second Amended Complaint."

{¶ 33} The trial court granted appellants' motion for leave to file their second amended complaint instanter on August 16, 2022.  "The substitution of an amended petition for an earlier one ordinarily constitutes an abandonment of the earlier pleading and a reliance upon the amended one."  *Wrinkle v. Trabert*, 174 Ohio St. 233 (1963), paragraph three of the syllabus.  Thus, an amended complaint "supersedes and replaces" the prior complaint.  *Recovery Funding, L.L.C. v. Spiers*, 2020-Ohio-364, ¶ 28 (10th Dist.). Once the trial court granted appellants leave to file the pleading attached to their August 10, 2022 motion for leave to file their second amended complaint instanter, it became the operative pleading upon which appellees sought dismissal and judgment on the pleadings.

{¶ 34} Appellants erroneously argue that the trial court decided the dispositive motions based on the July 28, 2022 complaint, rather than on the superseding August 10,

2022 amended complaint. The trial court cites the "Second Amended Complaint" in its order and entry, but those citations correspond to paragraphs in the August 10, 2022 amended complaint. It is not determinative that the August 10, 2022 amended complaint was not captioned "Second Amended Complaint," as appellants themselves captioned their motion for leave to file that pleading as "Plaintiffs' Motion for Leave to File Instanter [their] *Second Amended Complaint*." (Emphasis added.) (Capitalization omitted.) (Aug. 10, 2022 Mot. for Leave to File Instanter its Second Am. Compl. at 1.) But even had the trial court erroneously relied on the July 28, 2022 complaint, any error in that regard would have been harmless, as appellants have not identified (or even attempted to identify) any substantive differences between the complaints filed on July 28, 2022 and August 10, 2022, let alone any fact the trial court relied on that was not included in the August 10, 2022 complaint. We therefore overrule appellants' third assignment of error.

### F. Assignment of Error No. IV

{¶ 35} In their fourth assignment of error, appellants argue that the trial court erred by not granting appellants' February 15, 2024 motion to compel discovery. In that motion, appellants asked the trial court to deem admitted by Wilson matters upon which appellants had requested admission on October 27, 2023, and to compel Wilson and the Wilson firm to produce "the February 3, 2017 Deal Document containing the original wet signatures[,] . . . the Promissory Note containing original wet signatures of the buyers, verified accounting records of money received from [appellants], along with answers to the Interrogatories and the Production of Documents" requested on October 20, 2023, "and the JURIN client file." (Feb. 15, 2024 Mot. to Compel at 15.) The trial court did not rule on appellants' motion to compel, but "[w]hen a trial court enters judgment prior to ruling on a pending motion, that motion is considered to have been implicitly denied." *Vahdati'bana v. Scott R. Roberts & Assocs. Co., L.P.A.*, 2008-Ohio-1219, ¶ 14 (10th Dist.), citing *Akron v. Molyneaux*, 144 Ohio App.3d 421 (9th Dist. 2001).

{¶ 36} Appellants stated in their motion to compel that the parties had agreed at a June 15, 2023 status conference to exchange evidence through the discovery process. Appellants served discovery requests on Wilson, the Wilson firm, and the Emens Wolper firm on October 20, 2023—just one week before the October 27, 2023 discovery cutoff date—and requested responses within 28 days. The discovery cutoff date is "the last date for any party to seek the involvement of the assigned judicial officer in the discovery process by way of motion seeking a ruling, an order, sanctions, or other Court action, absent

extraordinary circumstances." Loc.R. 26.02. By waiting until one week before the discovery cutoff to serve their discovery requests, appellants all but ensured that an order to compel discovery would be unavailable to them under the local rules. Nor did appellants move the trial court for an extension of the discovery cutoff.

{¶ 37} A trial court has broad discretion when ruling on a motion to compel discovery, and we will not reverse its decision absent an abuse of discretion. *Walter v. ADT Sec. Sys.*, 2007-Ohio-3324, ¶ 39 (10th Dist.), citing *513 E. Rich St. Co. v. McGreevy*, 2003-Ohio-2487, ¶ 10 (10th Dist.). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Appellants had ample opportunity to conduct discovery in this case, but they did not file their motion to compel until more than three months after the discovery cutoff, did not request an extension of the discovery cutoff, and did not argue that extraordinary circumstances warranted divergence from the general rule precluding court intervention in the discovery practice after the discovery cutoff date. Therefore, we must conclude that the trial court's implicit denial of appellants' untimely motion to compel was not unreasonable, arbitrary, or unconscionable and did not constitute an abuse of discretion. *See Steele v. Mara Ents., Inc.*, 2009-Ohio-5716, ¶ 34. Accordingly, we overrule appellants' fourth assignment of error.

### G. Assignment of Error No. V

{¶ 38} The fifth assignment of error states that the trial court erred by not granting appellants' motion to substitute the special administrator of Emens's estate as a defendant following Emens's death. As with appellants' motion to compel, the trial court did not expressly rule on the motion for substitution, so we presume the trial court denied it. *See Vahdati'bana* at ¶ 14.

{¶ 39} Civ.R. 25(A)(1), which addresses substitution following the death of a party, states, in pertinent part:

> If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. . . . *Unless the motion for substitution is made not later than ninety days after the death is suggested upon the record* by service of a statement of the fact of the death as provided herein for the service of the motion, *the action shall be dismissed as to the deceased party.*

(Emphasis added.) If a motion for substitution is not filed within 90 days after the filing of a suggestion of a party's death, the trial court must dismiss the action as to the deceased party. *Id. See, e.g., Justice v. Lesueur*, 2002-Ohio-6429, ¶ 1 (7th Dist.) ("Because Justice did not timely substitute the proper party, the trial court had no choice but to dismiss the action.").

{¶ 40} Counsel for Wolper, Emens, and the Emens Wolper firm filed a suggestion of Emens's death on August 7, 2023. Appellants did not file a motion for substitution within 90 days after Emens's death was suggested on the record. Instead, appellants filed a motion for leave to file instanter a motion to substitute the special administrator of Emens's estate on November 13, 2023, more than 90 days later. In the motion for leave, appellants' counsel stated that she needed additional time to file the motion for substitution because she had to respond to appellees' other motions—specifically a motion for a protective order, filed October 19, 2023, and a motion to disqualify appellants' counsel, filed October 30, 2023—and because of demands brought on by her daughter's recent cancer diagnosis.

{¶ 41} Upon motion made after the expiration of the time specified for filing a motion for substitution, a trial court may extend the time for filing upon a showing that "the failure to act was the result of excusable neglect." Civ.R. 6(C). *See also First Union-Lehman Bros.-Bank of Am. Commercial Mtge. Trust v. Pillar Real Estate Advisors, Inc.*, 2014-Ohio-1105, ¶ 15 (2d Dist.). Even when a movant under Civ.R. 25(A)(1) does not expressly file a motion for an extension of time under Civ.R. 6(C), a showing of excusable neglect for failing to file a motion for substitution within 90 days after the notice of suggestion of death may justify a trial court in construing the motion to substitute as containing an implied motion for enlargement of time. *See Perry v. Eagle-Picher Industries*, 52 Ohio St.3d 168, 172 (1990), citing *Farrington v. Benjamin*, 100 F.R.D. 474, 476, fn. 3 (D.V.I. 1984).

{¶ 42} Appellants' fifth assignment of error does not address the trial court's implicit denial of appellants' motion for leave to file a motion for substitution of parties, but instead argues only that the trial court should have granted the motion for substitution. Yet, we may only find that the trial court erred by denying appellants' untimely motion if it erred by denying appellants' motion for leave to file that motion in the first instance. In any event, appellants demonstrate no abuse of discretion. *See Asamoah v. Sygma Network*, 2022-Ohio-1868, ¶ 17 (10th Dist.) (An appellate court must uphold a trial court's ruling on a motion for extension of time absent an abuse of discretion.).

{¶ 43} Appellants' motion for substitution was indisputably untimely under Civ.R. 25(A)(1), thus requiring appellants to demonstrate excusable neglect for the trial court to allow the motion. Counsel's statement that she was busy responding to other motions in this case does not demonstrate excusable neglect for the supposed inability to file her single-paragraph motion for substitution on or before November 6, 2023, as required by Civ.R. 25(A)(1). Counsel filed responses to those other motions nearly one week before the deadline for filing a motion for substitution. Appellants' memorandum in opposition to the motion for a protective order was filed on October 30, 2023, and their memorandum in opposition to the motion to disqualify appellants' counsel was filed on October 31, 2023, just one day after the appellees filed the motion for disqualification. Moreover, both memoranda were filed before the Delaware County Probate Court had even named a special administrator of Emens's estate. (*See* Nov. 13, 2023 Pls.' Mot. for Substitution of Party, Ex. 1.) Counsel's only other stated reason for the delay in filing the motion for substitution related to her daughter's cancer diagnosis. In that regard, however, counsel offered no dates or other explanation why she could not timely file her motion, or request an extension of time, before the 90-day timeframe expired. For these reasons, we cannot conclude that the trial court abused its discretion either by denying appellants' untimely motion for substitution, or by denying their motion for leave to file an untimely motion. We therefore overrule appellants' fifth assignment of error.

### H. Assignments of Error Nos. I and II

{¶ 44} Having disposed of appellants' subsidiary assignments of error, we now turn to the first and second assignments of error, in which appellants challenge the trial court's judgment granting appellees' dispositive motions based on the determination that appellants' claims are time-barred.

### 1. Standards of Review

{¶ 45} Wolper, Emens, and the Emens Wolper firm moved for judgment on the pleadings pursuant to Civ.R. 12(C). Any party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." Civ.R. 12(C). Motions for judgment on the pleadings "are specifically for resolving questions of law." *State ex rel. Midwest Pride IV v. Pontious*, 75 Ohio St.3d 565, 570 (1996), citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166 (1973). Judgment on the pleadings is appropriate only when "no material factual issues exist, and the movant is entitled to a judgment as a matter of law." *Id.*, citing *Burnside v. Leimbach*, 71 Ohio App.3d 399, 403 (10th Dist. 1991). We

review a decision granting a motion for judgment on the pleadings de novo. *Rayess v. Educational Comm. for Foreign Med. Graduates*, 2012-Ohio-5676, ¶ 18.

{¶ 46} Wilson and the Wilson firm filed a motion to dismiss, pursuant to Civ.R. 12(B)(6), for failure to state a claim upon which relief can be granted. A Civ.R. 12(B)(6) motion to dismiss is procedural and tests the sufficiency of the complaint. *Cool v. Frenchko*, 2022-Ohio-3747, ¶ 13 (10th Dist.), citing *Morrow v. Reminger & Reminger Co., L.P.A.*, 2009-Ohio-2665, ¶ 7 (10th Dist.). A trial court may dismiss a complaint, pursuant to Civ.R. 12(B)(6), only if it appears beyond doubt that the plaintiff can prove no set of facts entitling the plaintiff to recovery. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988), citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975). In reviewing a Civ.R. 12(B)(6) motion to dismiss, a trial court must presume the truth of all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 192.

{¶ 47} When a Civ.R. 12(B)(6) motion to dismiss presents matters beyond the complaint and the trial court does not exclude those matters, the trial court must treat the motion as a motion for summary judgment and determine it as provided in Civ.R. 56. Civ.R. 12(B). Because Wilson and the Wilson firm attached to their motion to dismiss a copy of a complaint that appellants filed against White and others in Holmes County C.P. case No. 22CV023 in April 2022, the trial court converted the motion to dismiss into one for summary judgment.[4]

{¶ 48} "Civ.R. 56(C) provides that summary judgment shall be granted when the filings in the action, including depositions and affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220, ¶ 24. A party moving for summary judgment bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 1996-Ohio-107, citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set

---

[4] Although appellants state in their appellate brief that the trial court committed reversible error by converting the motion to dismiss into a motion for summary judgment without first notifying the parties, appellants have not raised that issue as an assignment of error, and we therefore decline to address it. *See* App.R. 12(A)(1) (a court of appeals shall determine the appeal on its merits on the assignments of error); *State v. Moore*, 2021-Ohio-1379, ¶ 81 (10th Dist.).

forth specific facts showing there is a genuine issue of material fact for trial.  *Id.* at 293; Civ.R. 56(E).  We review a grant of summary judgment de novo.  *Bonacorsi* at ¶ 24.

{¶ **49**}  Because appellees argued in both of their dispositive motions that appellants' claims are time-barred under the applicable statute of limitations in R.C. 2305.11(A) and statue of repose in R.C. 2305.117(B), we now turn to those statutes, while also reviewing the inherent differences between statutes of limitations and statutes of repose.

## 2.  Statute of Limitations and Statute of Repose for Legal Malpractice

{¶ **50**}  Legal malpractice claims have long been subject to a one-year statute of limitations in Ohio.  From the time appellants retained the Emens Wolper firm and attorneys Emens, Wolper, and Wilson through June 15, 2021, R.C. 2305.11(A) stated, "an action for malpractice other than an action upon a medical, dental, optometric, or chiropractic claim . . . shall be commenced within one year after the cause of action accrued."  2016 Sub.S.B. No. 127; 2011 H.B. No. 78.  Effective June 16, 2021, an amended version of the statute provided more specifically, "an action for legal malpractice . . . shall be commenced within one year after the cause of action accrued." R.C. 2305.11(A), 2021 S.B. No. 13.

{¶ **51**}  Accrual of a legal malpractice claim is subject to a discovery rule.  *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 57 (1989), citing *Skidmore & Hall v. Rottman*, 5 Ohio St.3d 210 (1983), syllabus.  A cause of action for legal malpractice accrues and the one-year limitations period under R.C. 2305.11(A) begins to run "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later."  *Id.*  "By focusing on discovery as the element which triggers the statute of limitations," a discovery rule gives injured parties "adequate time to seek relief on the merits without undue prejudice to" defendants. *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111, 114 (1983), citing Miraldi, *Ohio's Statute of Limitations for Med. Malpractice*, 38 Ohio St. L.J. 125 (1977).

{¶ **52**}  Separate from the one-year statute of limitations, legal malpractice claims in Ohio are also subject to a four-year statute of repose, which took effect in 2021.  *See* R.C. 2305.117(B), 2021 S.B. No. 13.  Subject to certain exceptions not applicable here:

> (1) No action upon a legal malpractice claim . . . shall be commenced more than four years after the occurrence of the

act or omission constituting the alleged basis of the legal malpractice claim.

(2) If an action upon a legal malpractice claim . . . is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the claim, then, any action upon that claim is barred.

R.C. 2305.117(B)(1) and (2). The statute of repose begins to run upon the occurrence of the act or omission constituting the basis of the malpractice claim, *see* R.C. 2305.117(B), not when the claim accrues.

{¶ 53} The Supreme Court of Ohio has described Ohio's analogous statute of repose for medical claims as "a true statute of repose" that bars both accrued claims and those that have yet to vest. *Antoon v. Cleveland Clinic Found.*, 2016-Ohio-7432, ¶ 1. R.C. 2305.117(B) is no different. Like a plaintiff asserting a medical claim, a plaintiff must commence an action on a legal malpractice claim within four years after the occurrence of the act or omission constituting the basis of the claim; otherwise, the claim is time-barred. *See Antoon* at ¶ 23.

{¶ 54} Statutes of limitations and statutes of repose operate differently and have different purposes and objectives. *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014). A statute of limitations establishes a time in which a civil case must be commenced, based on when the claim accrued, but a statute of repose bars " 'any suit that is brought after a specified time since the defendant acted * * * even if this period ends before the plaintiff has suffered a resulting injury.' " *Wilson v. Durrani*, 2020-Ohio-6827, ¶ 9, quoting *Black's Law Dictionary* (11th Ed. 2019). A statute of repose "establishes a period beyond which [malpractice] claims may not be brought *even if the injury giving rise to the claim does not accrue because it is undiscovered until after the period has ended.*" (Emphasis added.) *Ruther v. Kaiser*, 2012-Ohio-5686, ¶ 21 (discussing the medical statute of repose). The Supreme Court has explained:

> Statutes of limitations emphasize plaintiffs' duty to diligently prosecute known claims. [*CTS Corp.* at 8], citing *Black's Law Dictionary* 1546 (9th Ed.2009). Statutes of repose, on the other hand, emphasize defendants' entitlement to be free from liability after a legislatively determined time. *Id.* at 9. In light of those differences, statutory schemes commonly pair a shorter statute of limitations with a longer statute of repose. *California Pub. Emps.' Retirement Sys. v. ANZ Securities, Inc.*, [582 U.S. 497] (2017). When the discovery rule—that is, the rule that the

> statute of limitations runs from the discovery of injury—governs the running of a statute of limitations, the "discovery rule gives leeway to a plaintiff who has not yet learned of a violation, while the rule of repose protects the defendant from an interminable threat of liability." *Id.* at [592].

*Wilson* at ¶ 10. In other words, while the discovery rule might delay the accrual of a claim and the running of the statute of limitations, the statute of repose mitigates the effects of the discovery rule by establishing an endpoint to a defendant's potential liability. *Owens v. Purcel*, 2024-Ohio-1514, ¶ 14 (6th Dist.).

{¶ 55} The trial court held that appellants' claims are barred by both the statute of limitations and the statute of repose, and appellants challenge the trial court's holding on both fronts. Appellants' arguments, however, almost exclusively concern when they *learned* of an injury allegedly caused by their attorneys' acts or failures to act. Those arguments, about when their claims accrued, apply only to application of the statute of limitations. To the extent appellants argue that the accrual of their claims is relevant to application of the statute of repose, they demonstrate a fundamental misunderstanding of statutes of repose.

{¶ 56} We first consider whether appellants' malpractice claims survive application of the statute of repose, beginning with their claims against Wolper, Emens, and the Emens Wolper firm.

### 3. Appellants' Malpractice Claims are Time-Barred by the Statute of Repose

{¶ 57} As stated above, an action upon a legal malpractice claim is time-barred if it is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the claim. R.C. 2305.117(B). Appellants' malpractice claims against Wolper, Emens, and the Emens Wolper firm stem from acts or omissions that occurred as part of those appellees' representation of appellants with respect to the sale of appellants' sand and gravel business. Appellants retained Wolper, Emens, Wilson, and the Emens Wolper firm to represent them with respect to a potential sale of their business in 2013, and that representation was to include legal research, selection and drafting of documents as part of the sale, and the provision of legal advice. The sale closed on February 27, 2017, and appellants do not allege that they maintained an attorney-client relationship with Wolper, Emens, or the Emens Wolper firm with respect to the sale after Wilson left the Emens Wolper firm on March 1, 2017. To the contrary, they allege that Wilson and the Wilson firm

represented them thereafter. The Emens Wolper firm returned the remaining balance of appellants' retainer to Jurin on August 3, 2017.

{¶ 58} Appellants generally allege that the Emens Wolper firm violated the applicable standard of care by giving Wilson too much responsibility over appellants' legal matters, which necessarily occurred prior to Wilson leaving his employment with the Emens Wolper firm on March 1, 2017. Appellants' more particular allegations of acts or omissions underlying their malpractice claims against Wolper, Emens, and the Emens Wolper firm likewise occurred in early 2017, while Wilson remained an employee of the Emens Wolper firm. Specifically, appellants' allegations with respect to the negotiation and consummation of the business sale occurred prior to or just after the February 27, 2017 closing. Any error regarding the selection, drafting, and execution of documents as part of the sale package—including the alleged failure to obtain the buyers' signatures on a promissory note or second mortgage and the use of an employment agreement as a means for the buyers to finance the unpaid portion of the purchase price—occurred prior to the closing, and alleged failures to file or record documents to protect appellants' interests occurred shortly thereafter. Finally, to the extent appellants allege that the Emens Wolper firm failed to ensure that Wilson completed all the necessary work on the sale before leaving the firm and failed to assign unfinished duties to another attorney, those acts or omissions again occurred on or around March 1, 2017, when Wilson left the Emens Wolper firm.

{¶ 59} Viewing the allegations in the August 2022 amended complaint in the light most favorable to appellants, and presuming that allegedly deficient conduct by Wolper, Emens, and the Emens Wolper firm continued throughout 2017, the trial court concluded that appellants' claims "must have been filed no later than December 31, 2021 in order to avoid being time barred" by the statute of repose. (May 6, 2024 Order & Entry at 16.) We agree with the trial court that the acts or omissions upon which appellants base their malpractice claims against Wolper, Emens, and the Emens Wolper firm occurred in 2017, more than four years before appellants filed their malpractice claims against those appellees.

{¶ 60} We now turn to appellants' claims against Wilson and the Wilson firm. Analysis of those claims through the lens of the statute of repose largely tracks the analysis of appellants' claims against Wolper, Emens, and the Emens Wolper firm. As with appellants' claims against Wolper, Emens, and the Emens Wolper firm, most of the acts or omissions appellants have alleged as the basis for their malpractice claims against Wilson

and the Wilson firm, including allegedly deficient conduct concerning the drafting, execution, and review of legal documents and failure to record documents to protect appellants' interests in the event of default, occurred during the negotiation and consummation of the sale of appellants' business in February 2017. To the extent appellants base their malpractice claims against Wilson and the Wilson firm on acts or omissions committed in 2017, their claims are barred by the four-year statute of repose.

{¶ 61} The August 10, 2022 amended complaint does allege conduct by Wilson following his departure from the Emens Wolper firm, and extending beyond 2017. For example, in 2018, as Jurin's attorney with respect to "his employment relationship with Razor Lake Materials," Wilson wrote letters to the buyers about their failure to pay Jurin under the employment agreement and in response to their claims that Jurin had breached the employment agreement. (Aug. 10, 2022 Am. Compl., Ex. 5 at 2-3.) Appellants and White remained in contact with Wilson through the conclusion of the Coshocton County case. Following the unfavorable verdict in the Coshocton County case, appellants again reached out to Wilson and fault Wilson for not speaking with them before the appeal time for that case elapsed. Nevertheless, appellants' allegations of post-2017 conduct by Wilson do not alter that their harm in this case arises from alleged actions or inactions that occurred in early 2017, during the negotiation and consummation of the sale of appellants' business. These most notably include appellees' alleged failure to obtain signatures on a promissory note, failure to obtain signatures on and record a second mortgage in favor of appellants, and use of the employment agreement as a means of financing the unpaid portion of the purchase price. There is nothing in the August 2022 amended complaint to suggest that later actions or inactions, from 2018 forward, caused appellants new or additional harm. We therefore agree with the trial court that the four-year repose period for appellants' malpractice claims against Wilson and the Wilson firm began to run in 2017.

{¶ 62} Appellants do not argue that the statute of repose does not apply to this case as a matter of course, but they do argue in their appellate brief that the doctrine of equitable tolling applies to lengthen the time in which they were entitled to commence their malpractice claims, due to a COVID-19-related mistrial that led to a five-month delay in the Coshocton County case. Appellants did not raise an equitable-tolling argument in the trial court, however, and they have therefore waived it for purposes of appeal. *See Person v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-798, ¶ 11 (10th Dist.) (plaintiff waived equitable tolling by failing to raise it in the Court of Claims), citing *Moore v. Ohio Dept. of Rehab. &*

*Corr.*, 2011-Ohio-1607 (10th Dist.). Moreover, unlike statutes of limitations, statutes of repose are generally not subject to equitable tolling. *California Pub. Emps.' Retirement Sys.*, 582 U.S. at 511 ("Consistent with the different purposes embodied in statutes of limitations and statutes of repose, it is reasonable that the former may be tolled by equitable considerations even though the latter in most circumstances may not."). In fact, the Supreme Court has recently held that only explicit, legislatively created exceptions may extend the time for filing under the statute of repose. *Elliot v. Durrani*, 2022-Ohio-4190, ¶ 18, citing *Wilson*, 2020-Ohio-6827, at ¶ 33.[5]

{¶ 63} Finally, even putting aside appellants' failure to raise equitable tolling in the trial court and the inapplicability of equitable tolling to periods of repose in Ohio, appellants rationale in support of equitable tolling of the statute of repose here misses the mark. Appellants contend that the mistrial in the Coshocton County case delayed their acquisition of knowledge of appellees' alleged malpractice, but when appellants learned of the alleged malpractice is irrelevant to the application of the statute of repose, which is measured solely from the time of the act or omission that allegedly constituted malpractice.

{¶ 64} Appellants also argue in their appellate brief that Wilson relocated to Florida before the end of February 2018, and that both the statute of limitations and the statute of repose were tolled while Wilson remained out of state. As it existed in 2022 when appellants filed this action, R.C. 2305.15 provided:

> When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.98, and 1304.35 of the Revised Code does not begin to run until the person comes into the state or while the person is so absconded or concealed. After

---

[5] On March 6, 2025, appellants filed a notice of supplemental authority, directing this court to *Comprehensive Marketing, Inc. v. Huck Bouma, P.C.*, 2023 IL. App. (1st) 22094-U, 2023 Ill. App. Unpub. LEXIS 1479, which Wilson and the Wilson firm moved to strike on March 11, 2025. We deny the motion to strike, but we do not find the cited out-of-state appellate decision persuasive on questions before this court. The Illinois appellate court held that "plaintiff's allegations regarding former counsel's concealment of plaintiff's legal malpractice cause of action and plaintiff's reasonable reliance on former counsel's misrepresentations were sufficient to meet the pleading requirements for fraudulent concealment and equitable estoppel and thereby toll the statute of repose." *Id.* at ¶ 1. The appellate court decided the matter on the basis of an Illinois statute that provides, " 'If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.' " *Id.* at ¶ 34, quoting 735 Ill.Ann.Stat. 5/13-215. Further, the Supreme Court of Illinois had previously held that the fraudulent-concealment statute applied as an exception to statutes of repose. *DeLuna v. Burciaga*, 223 Ill.2d 49, 68 (2006). Appellants have identified no similar statutory or case authority in Ohio.

> the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.

2003 Am.Sub.S.B. No. 281. In *Elliot*, the Supreme Court held that R.C. 2305.15 tolled the medical malpractice statute of repose as to a defendant who absconded to another country before the statute of repose had expired.[6]

{¶ 65} Appellants attached to their memorandum in opposition to Wilson and the Wilson firm's motion to dismiss two documents that had not been attached to their August 10, 2022 amended complaint: (1) an unauthenticated letter from the Florida Department of State, which states that a "Craig James Wilson" with a residential address in Seminole, Florida, registered to vote in Florida in April 2019, and (2) an unauthenticated printout from www.votepinellas.com, which purports to confirm voter eligibility for an unidentified voter with the same residential address listed in the letter. *Id.* at Ex. 2-3. Based on those documents, appellants argue that Wilson "left Ohio in 2018 or 2019" and "moved to Florida sometime before April 2019" and that "there is a good chance that the 'statute of limitations' does not bar any of [appellants'] claims against Wilson," the Wilson firm, and the Emens Wolper firm. (Dec. 16, 2022 Pls.' Resp. in Opp. to Def. Craig Wilson's Mot. to Dismiss at 4, 9-10.) Wilson and the Wilson firm objected to appellants' submission of those documents and moved the trial court to strike them along with appellants' arguments based upon them.

{¶ 66} Even assuming the now legislatively repudiated rule from *Elliot* applies here, appellants waived application of R.C. 2305.15 to the statute of repose by not raising it in the trial court. Appellants did not raise Wilson's alleged move out of state as tolling either the statute of repose or the statute of limitations in their response to the motion for judgment on the pleadings filed by Wolper, Emens, and the Emens Wolper firm. And while they did mention Wilson's alleged move to Florida in their memorandum in opposition to Wilson and the Wilson firm's motion to dismiss, they raised tolling under R.C. 2305.15 only in relation to the *statute of limitations*. Because appellants did not argue in the trial court that Wilson's supposed move to Florida tolled the *statute of repose*, they may not assert it for the first time on appeal. *See Ezeh v. Ohio Dept. of Mental Health*, 2024-Ohio-2823, ¶ 9

---

[6] Effective October 24, 2024, the General Assembly amended R.C. 2305.15 to overrule *Elliot* and to preclude tolling of the statute of repose based on a defendant's absence from the state. *See* 2024 Am.Sub.S.B. No. 179, § 1, 3 (effective Oct. 24, 2024).

(10th Dist.), citing *Person* at ¶ 11; *Mindlin v. Zell*, 2012-Ohio-3543, ¶ 17-18 (10th Dist.) (declining to address for the first time on appeal plaintiff's arguments that the limitations period was tolled by various statutes, including R.C. 2305.15).

{¶ 67} The actions or inactions that form the basis of appellants' malpractice claims occurred in 2017, more than four years before appellants filed their complaint in this case, and because there is no basis from which to conclude that the statute of repose was tolled, we agree with the trial court that appellants' malpractice claims are barred by the statute of repose. Having concluded that the trial court properly determined that appellants' malpractice claims are barred by the statute of repose, we need not consider whether those claims are likewise barred by the statute of limitations. For these reasons, we conclude the trial court did not err in granting appellees' dispositive motions, and we accordingly overrule appellants' first and second assignments of error.[7]

## IV. CONCLUSION

{¶ 68} Having overruled each of appellants' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and BEATTY BLUNT, JJ., concur.

———————————

[7] Appellants' arguments on appeal focus solely on the timeliness or untimeliness of their malpractice claims. They do not make any argument on appeal concerning the trial court's judgment in favor of appellees on appellants' claims for unjust enrichment, promissory estoppel, and equitable estoppel.